**STATE of Minnesota, Plaintiff,**

v.

**George Joseph GUMINGA, Defendant.**

**No. C5-85-2023.**

Supreme Court of Minnesota.

Oct. 31, 1986.

Gary E. Persian, Minneapolis, for defendant.

Steven A. Sondrall, William C. Strait, Hopkins, Sp. Pros. Attys., Robbinsdale, for plaintiff.

YETKA, Justice.

On May 29, 1985, the state filed a criminal complaint in Hennepin County Municipal Court against George Joseph Guminga, defendant. Guminga moved to dismiss the charge on August 22, 1985. The court held a hearing on August 28 and subsequently denied the motion and certified the present question of law to the Minnesota Court of Appeals on October 29, 1985. The court of appeals then requested this court to take jurisdiction over the certification, which was granted on December 16, 1985.

On March 29, 1985, in the course of an undercover operation, two investigators for the City of Hopkins entered Lindee's Restaurant, Hopkins, Minnesota, with a 17-year-old woman. All three ordered alcoholic beverages. The minor had never been in Lindee's before, and the waitress did not ask the minor her age or request identification. When the waitress returned with their orders, the minor paid for all the drinks. After confirming that the drink contained alcohol, the officers arrested the waitress for serving intoxicating liquor to a minor in violation of Minn.Stat. § 340.73 (1984). The owner of Lindee's, defendant George Joseph Guminga, was subsequently charged with violation of section 340.73 pursuant to Minn.Stat. § 340.941 (1984), which imposes vicarious criminal liability on an employer whose employee serves intoxicating liquor to a minor.[1] The state

---

1. The complaint states the penalty as possible imprisonment and fine:

    COUNT I: SALE OF INTOXICATING LIQUOR TO A MINOR.

    M.S. 340.73, 340.941.

    Penalty: 0–1 year imprisonment and/or 0–$3,000 fine.

... sell, furnish and deliver intoxicating liquor to a person under the age of 19 when his employee, one MARY LYNN ISHAM, did sell, furnish and deliver intoxicating liquor to a person under the age of 19.

does not contend that Guminga was aware of or ratified the waitress's actions.

Guminga moved to dismiss the charges on the ground that section 340.941 violates the due process clauses of the federal and state constitutions. The state contended that the issue was not justiciable and that, even if justiciable, the statute was constitutional. After holding a hearing on August 28, 1985, the court denied the motion to dismiss.

The municipal court found that, while, under Minnesota case law, section 340.941 has apparently withstood constitutional scrutiny, the argument against its constitutionality is persuasive enough to merit certification of the issue. Finding *State v. Young*, 294 N.W.2d 728 (Minn.1980), controlling, the court acknowledged that language in *Young* is subject to the interpretation that the case was decided on justiciability grounds and did not reach the constitutional challenge. The court declined to adopt this interpretation, however, and found that the criminal sanctions imposed by section 340.941 were held constitutional in *Young*. However, the court found persuasive the argument against the constitutionality of such a statute adopted by the Georgia Supreme Court in *Davis v. City of Peachtree City*, 251 Ga. 219, 304 S.E.2d 701 (1983), and certified the question to the Minnesota Court of Appeals.

The court of appeals, pursuant to the June 4, 1985 order of this court regarding certified questions from trial courts, requested this court to take jurisdiction over the question, and the request was granted on December 16, 1985.

The certified question of law before this court is as follows:

Whether Minn.Stat. § 340.941, on its face, violates the defendant's right to due process of law under the Fourteenth Amendment to the United States Constitution and analogous provisions of the Constitution of the State of Minnesota.

We find that the statute in question does violate the due process clauses of the Minnesota and the United States Constitutions and thus answer the question in the affirmative.

Guminga argues that section 340.941 violates due process as an unjustified and unnecessary invasion of his personal liberties. He maintains that the public interest in prohibiting the sale of liquor to minors does not justify vicarious criminal liability for an employer since there are less burdensome ways to protect the public interest. The constitutionality of the statute has not been squarely addressed by the court, he argues, since earlier cases did not directly raise the issue of whether the statute is unconstitutional.

The state contends that this court originally upheld the constitutionality of section 340.941 in *State v. Lundgren*, 124 Minn. 162, 144 N.W. 752 (1913), which it recently reaffirmed in *Young*. According to the state, vicarious criminal liability for employers whose employees sell alcohol to minors is a necessary part of liquor control.

Minn.Stat. § 340.73 (1984) provides criminal penalties for any person selling intoxicating liquor to a minor:

Subdivision 1. It is unlawful for any person, except a licensed pharmacist to sell, give, barter, furnish, deliver, or dispose of, in any manner, either directly or indirectly, any intoxicating liquors or nonintoxicating malt liquors in any quantity, for any purpose, to any person under the age of 19 years, or to any obviously intoxicated person.

Subd. 2. [Repealed, 1984 c 626 s 14]

Subd. 3. Whoever in any way procures intoxicating liquor or nonintoxicating malt liquor for the use of any person named in this section shall be deemed to have sold it to that person. Any person violating any of the provisions of this section is guilty of a gross misdemeanor.

Minn.Stat. § 340.941 (1984) imposes vicarious criminal liability on the employer for an employee's violation of section 340.73:

Any sale of liquor in or from any public drinking place by any clerk, barkeep, or other employee authorized to sell liquor in such place is the act of the employer as well as that of the person actu-

ally making the sale; and every such employer is liable to all the penalties provided by law for such sale, equally with the person actually making the same.

Under Minn.Stat. § 609.03 (1984), a defendant who commits a gross misdemeanor may be sentenced to "imprisonment for not more than one year or to payment of a fine of not more than $3,000 or both." In addition, a defendant convicted under section 340.941 may, at the discretion of the licensing authority, have its license suspended, revoked or be unable to obtain a new license. Minn.Stat. §§ 340.13, .135, .19 (1984); see Op. Minn. Att'y Gen. 218–G–14 (April 8, 1940). As a gross misdemeanor, a conviction under section 340.941 would also affect a defendant's criminal history score were he or she to be convicted of a felony in the future. Minn.Sent.Guide. II.B.3.

The preliminary issue is whether this court has already ruled on the constitutionality of section 340.941. The original version of the present statute was passed in 1905. Minn. Rev. Laws § 1565 (1905). In *State v. Lundgren,* 124 Minn. 162, 144 N.W. 752 (1913), the defendant, a bar owner whose bartender served liquor to a minor without the defendant's knowledge and contrary to his instructions, challenged the vicarious criminal liability imposed by the statute. The court found that the criminal liability imposed by the statute, although "drastic," bears a reasonable relationship to the public policy it is to address. In *State v. Young,* 294 N.W.2d 728 (Minn. 1980), this court cited *Lundgren* when a defendant whose employee sold liquor to a minor without his knowledge or authority challenged section 340.941 as a violation of due process. While the court stated that imprisonment under section 340.941 would

probably be unconstitutional,[2] it found that, since only a fine had been imposed, there had been no due process violation.

This case presents a different situation. Since this is not an appeal from a conviction, we do not yet know whether, if found guilty, Guminga would be subjected to imprisonment, a suspended sentence, or a fine. Even if there is no prison sentence imposed, under the new sentencing guidelines, a gross misdemeanor conviction will affect his criminal history score were he to be convicted of a felony in the future. *Young,* on the other hand, was decided before the sentencing guidelines took effect. This case presents a direct challenge to the constitutionality of section 340.941.

We find that criminal penalties based on vicarious liability under Minn.Stat. § 340.-941 are a violation of substantive due process and that only civil penalties would be constitutional. A due process analysis of a statute involves a balancing of the public interests protected against the intrusion on personal liberty while taking into account any alternative means by which to achieve the same end. *See Communist Party v. Subversive Activities Control Board,* 367 U.S. 1, 81 S.Ct. 1367, 6 L.Ed.2d 625 (1961); *Barton Contracting Co., Inc. v. City of Afton,* 268 N.W.2d 712, 715 (Minn.1978) ("[T]he requirements of due process must be measured according to the nature of the government function involved and whether or not private interests are directly affected by the government action."); W. LaFave & A. Scott, Handbook on Criminal Law § 20 (1972). Section 340.941 serves the public interest by providing additional deterrence to violation of the liquor laws. The private interests affected, however, include liberty, damage to reputation and other future disabilities arising from crimi-

---

**2.** In *Young,* the court found as persuasive authority for the proposition that imprisonment under section 340.941 would be unconstitutional the earlier case of *Hershorn v. People,* 108 Colo. 43, 113 P.2d 680 (1941), and *Commonwealth v. Koczwara,* 397 Pa. 575, 155 A.2d 825 (1959), *cert. denied,* 363 U.S. 848, 80 S.Ct. 1624, 4 L.Ed.2d 1731 (1960). In *Hershorn,* the Colorado Supreme Court upheld a similar vicarious criminal liability statute since violation consti-

tuted only a misdemeanor, but held that a felony conviction would be excessive punishment. In *Koczwara,* the Pennsylvania Supreme Court allowed conviction of the defendant on a *respondeat superior* basis as long as the punishment imposed was a fine and not imprisonment, which the court found to be excessive and unprecedented for crimes based on vicarious liability.

nal prosecution for an act which Guminga did not commit or ratify. Not only could Guminga be given a prison sentence or a suspended sentence, but, in the more likely event that he receives only a fine, his liberty could be affected by a longer presumptive sentence in a possible future felony conviction. Such an intrusion on personal liberty is not justified by the public interest protected, especially when there are alternative means by which to achieve the same end, such as civil fines or license suspension, which do not entail the legal and social ramifications of a criminal conviction. *See* Model Penal Code § 1.04 comment (b) (1985).[3]

We decline, however, to rewrite section 340.941 by holding that it can be enforced only by civil penalties. That is more properly a legislative function.

The dissent cites the Model Penal Code; LaFave and Scott, Handbook on the Criminal Law; and Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv.L. Rev. 689 (1930). These authorities are used to support its argument that the statute should be upheld. The dissent fails to mention, however, that the commentators cited by the dissent fully support our position that persons vicariously liable for li-

quor law violations cannot be criminally punished. Though it is true that the Model Penal Code makes provisions for vicarious liability on criminal cases, the commentary explicitly recommends that such liability only be imposed "in instances in which the stigma and the sanctions are not assimilated to those that are appropriate for crime." Model Penal Code § 2.06(2)(b) comment 4 (1985). In a related section dealing with appropriate treatment of all vicarious or strict liability crimes, the drafters of the code were quite explicit in their beliefs on the subject:

The liabilities involved are indefensible, unless reduced to terms that insulate conviction from the type of moral condemnation that is and ought to be implicit when a sentence of probation or imprisonment may be imposed. It has been argued, and the argument undoubtedly will be repeated, that strict liability is necessary for enforcement in a number of the areas where it obtains. But if practical enforcement precludes litigation of the culpability of alleged deviation from legal requirements, the enforcers cannot rightly demand the use of penal sanctions for the purpose. Crime does and should mean condemnation and no

---

**3.** We agree with the reasoning of the Georgia Supreme Court in *Davis v. City of Peachtree City*, 251 Ga. 219, 304 S.E.2d 701 (1983). *Davis* involved the criminal conviction of the president of a chain of convenience stores whose employee had sold liquor to a minor. The defendant was prosecuted under a city ordinance holding licensees responsible for the acts of their employees and received a $300 fine and a 60–day suspended sentence. The Georgia Supreme Court reversed the conviction, ruling that it was a violation of due process since the public interest did not justify criminal prosecution:

In balancing this burden against the public's interests, we find that it cannot be justified under the due process clauses of the Georgia or United States Constitutions, regardless of Peachtree City's admittedly legitimate interests of deterring employers from allowing their employees to break the law and of facilitating the enforcement of these laws. This is especially true, when, as here, there are other, less onerous alternatives which sufficiently promote these interests. The Model Penal Code recommends that civil violations providing civil penalties such as fines or revo-

cation of licenses be used for offenses for which the individual was not morally blameworthy and does not deserve the social condemnation "implicit in the concept 'crime'." Model Penal Code § 1.04(s), Comments, Tent. Draft No. 2, p. 7 (1954). The availability of such sanctions renders the use of criminal sanctions in vicarious liability cases unjustifiable. LaFave & Scott, supra, p. 228.

Although some commentators and courts have found that vicarious criminal liability does not violate due process in misdemeanor cases which involve as punishment only a slight fine and not imprisonment, we decline to so hold. The damage done to an individual's good name and the peril imposed on an individual's future are sufficient reasons to shift the balance in favor of the individual. The imposition of such a burden on an employer "cannot rest on so frail a reed as whether his employee will commit a mistake in judgment," but instead can be justified only by the appropriate prosecuting officials proving some sort of culpability or knowledge by the employer.

*Davis*, 304 S.E.2d 703–04 (citations omitted).

court should have to pass that judgment unless it can declare that the defendant's act was culpable. This is too fundamental to be compromised. The law goes far enough if it permits the imposition of a monetary penalty in cases where strict liability has been imposed.

Model Penal Code § 2.05, comment 1 (1985).

The dissent's citation to an article by Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv.L.Rev. 689 (1930), is also inapposite. After finding numerous opinions on *both* sides of the question of whether to impose vicarious criminal liability, Professor Sayre states: "The liquor cases embody numerous diverging and conflicting views, and cannot be reconciled." *Id.* at 715–16. Professor Sayre noted:

> The danger is that criminal courts may forget the fundamental distinctions between criminal and civil liability for another's acts, and begin to use as precedents for true-crime cases those liquor cases which virtually adopt the doctrine of *respondeat superior.*

*Id.* at 716. Professor Sayre went on to summarize the appropriate legal principle in these terms:

> As the decisions indicate, a sharp line must be drawn between true crimes involving serious punishments and petty misdemeanors involving only light monetary fines. Where the offense is in the nature of a true crime, that is, where it involves moral delinquency or is punishable by imprisonment or a serious penalty, it seems clear that the doctrine of *respondeat superior* must be repudiated as a foundation for criminal liability.

*Id.* at 717.

Finally, far from endorsing criminal sanctions for violation of vicarious liability statutes, commentators LaFave and Scott believe that such sanctions are a mistake.

> To the extent that vicarious liability can be justified in the criminal law, it should not be utilized to bring about the type of moral condemnation which is implicit when a sentence of imprisonment is imposed. On the other hand, imposition of a fine is consistent with the rationale behind vicarious criminal liability. Vicarious liability is imposed because of the nature and inherent danger of certain business activities and the difficulties of establishing actual fault in the operation of such businesses. A fine, unlike imprisonment, is less personal and is more properly viewed as a penalty on the business enterprise.

> \* \* \* \* \* \*

> Yet, it must be recognized that the imposition of criminal liability for faultless conduct is contrary to the basic Anglo-American premise of criminal justice that crime requires personal fault on the part of the accused. Perhaps the answer should be the same as the answer proposed in the case of strict-liability crimes: it is proper for the legislature to single out some special areas of human activity and impose vicarious liability on employers who are without personal fault, but the matter should not be called a "crime" and the punishment should not include more than a fine or forfeiture or other civil penalty; that is, it should not include imprisonment. As the law now stands, however, in almost all jurisdictions imprisonment and the word "criminal" may be visited upon perfectly innocent employers for the sins of their employees.

LaFave & Scott, Handbook on Criminal Law § 32 at 227–28 (1972).

Moreover, this court, in *State v. Young*, 294 N.W.2d 728 (Minn.1980), was dealing only with the imposition of a fine, not imprisonment. We suggested in that case that imprisonment might dictate a different result.

The dissent argues that vicarious liability is necessary as a deterrent so that an owner will impress upon employees that they should not sell to minors. However, it does not distinguish between an employer who vigorously lectures his employees and one who does not. According to the dissent, each would be equally guilty. We believe

it is a deterrent enough that the employee who sells to the minor can be charged under the statute and that the business is subject to fines or suspension or revocation of license.

In this last quarter of the twentieth century, there is doubt whether the United States Supreme Court would uphold a conviction under the provisions of the United States Constitution. Even if it were to do so, the statute we hold violates Minn.Const. art. I, § 7, which states:

> Due process; prosecutions; double jeopardy, self-incrimination; bail; habeas corpus. No person shall be held to answer for a criminal offense without due process of law, and no person shall be put twice in jeopardy of punishment for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.

We specifically and exclusively decide the question under the provisions of the Minnesota Constitution herein cited. We find that, in Minnesota, no one can be convicted of a crime punishable by imprisonment for an act he did not commit, did not have knowledge of, or give expressed or implied consent to the commission thereof.

The certified question is thus answered in the affirmative that we hold section 340.-941 unconstitutional under the provisions of the Minnesota Constitution cited.

KELLEY, Justice (dissenting):

I respectfully dissent. The strong public interest in prohibiting the sale of liquor to minors justifies the imposition of vicarious liability on the bar owner—employer for illegal sales to minors made by an employee. I respectfully suggest that in ruling Minn.Stat. § 340.941 (1984) unconstitutional, the majority has failed to give adequate weight to the clearly expressed, long-standing public policy of this state as reflected in Section 340.941. Imposition of vicarious liability and criminal punishment for sale of intoxicating liquor to minors has been the law in this state since 1905. *See* Minn.Rev. Laws § 1565 (1905).

In explaining the meaning and the purpose of a nearly identical predecessor of this statute, the court in 1913 stated:

> This language plainly means that the act of the barkeeper is the act of the proprietor, that the proprietor must pay the penalty for sales made by his barkeeper in violation of the law, and that the delinquency of the barkeeper is the only evidence required to prove the guilt of the proprietor. The fact that the sale was made without the knowledge or assent of the proprietor and contrary to his general instructions furnishes no defense. The language of this statute is susceptible of no other construction. The offense is one of the class where proof of criminal intent is not essential. The statute makes the act an offense, and imposes a penalty for violation of the law, irrespective of knowledge or intent.
>
> The statute is drastic in its terms, but the Legislature was doubtless of the opinion that drastic measures are required to accomplish the purpose of enforcement of laws regulating the sale of intoxicating liquors. The law was in existence when the offense was committed. It was a notice to every man choosing to follow this line of business that he must control his own business and the men he employs in it, and that he is bound under penalty of the law to employ only men who will not commit crime in his name.

*State v. Lundgren,* 124 Minn. 167–68, 144 N.W. 752, 754 (1913) (citations omitted).

Applying the rule of *Lundgren,* we upheld against constitutional challenge the sentence of conviction of a tavern owner for contributing to the delinquency of a minor. *State v. Sobelman,* 199 Minn. 232, 271 N.W. 484 (1937). The defendant was convicted, even though the state did not allege he was personally present in the tavern or that the minor was there with his knowledge or express authority. 199 Minn. at 234, 271 N.W. at 485. The court in *Sobelman* reasoned:

> The protection of the morals and general well-being of minors is obviously what the statute aims at. If one operat-

ing a place where the vending of intoxicating liquor is the primary objective * * is to be exonerated from liability because he happens, whether by design or otherwise, to be absent at times when convenient to be away, then assuredly the very purpose of the law is frustrated and made for naught. The very spirit, intent, and purpose of the law, including as well the plain letter of it, repel the notion that any person so conducting his place of business can escape liability by absenting himself therefrom but leaving his servants and agents in charge to do as they please to his financial advantage, but at their own risk if caught in the game of violation.

199 Minn. at 234–35, 271 N.W. at 485.

In *State v. Holm,* 201 Minn. 53, 275 N.W. 401 (1937), this court upheld the conviction of a liquor store owner for selling intoxicating liquor to a minor. Construing a statutory provision prohibiting the sale of intoxicating liquor to any person under the age of 21, the court wrote: "The primary purpose in mind was to keep intoxicating liquor away from minors. The sound social and moral reasons behind this purpose are so evident that no discussion here is necessary." 201 Minn. at 55, 275 N.W. at 402. In *Holm,* the employee, the actual seller of the liquor to the minor, had not been sufficiently identified to sustain a conviction. 201 Minn. at 55–56, 275 N.W. at 402. The liquor store owner claimed it was necessary to prove intent. We rejected this argument, ruling the defendant was responsible for sales made on his premises by his employees with or without his knowledge and consent. *Id.* More recently, this court reiterated the *Lundgren* rationale in upholding a conviction under Minn.Stat. § 340.-941. *State v. Young,* 294 N.W.2d 728 (Minn.1980).

The *Lundgren* reasoning seems even more compelling today now that the state has raised the drinking age to 21 from 19. In so doing, the legislature recognized the societal dangers of the consumption of alcoholic beverages by younger people, even though they are adults for other legal pur-

poses. Act of March 17, 1986, ch. 330 § 6, 1986 Minn.Laws Vol. 2, p. 30, 34–36 (West Legis.Serv.1986), amending Minn.Stat. § 340A.503 (1985 Supp.). In the same chapter, the legislature enacted a law requiring every application for a driver's license to include information on the effect of alcohol on driving ability and the levels of alcohol-related fatalities and accidents. *Id.* at § 1, p. 30–31. The state legislature has had a long-standing and continuing concern about problems associated with minors who consume alcoholic beverages. The defendant cannot claim a due process violation for lack of notice of a law on the books for more than eight decades.

Furthermore, imposition of vicarious liability and the threat of a short jail, not prison, sentence is reasonably related to the legislative purpose: enforcement of laws prohibiting liquor sales to minors. Without the deterrent of possible personal criminal responsibility and a sentence, the legislature could have rationally concluded that liquor establishment owners will be less likely to impress upon employees the need to require identification of age before serving liquor. Limiting punishment to a fine allows bar owners to view their liability for violations as nothing more than an expense of doing business. The gravity of the problems associated with minors who consume alcoholic beverages justifies the importance by the legislature of harsher punishment on those who help contribute to those problems. The state has the right to impose limited criminal vicarious liability on bar proprietors as a reasonable exchange for the state-granted privilege of a liquor license.

The majority today appears eager to destroy that 80 years of legislative policy and court interpretation in order to reach out and strike down Minn.Stat. § 340.941 on constitutional grounds. It does so even though in the present case the issue is not justiciable. Guminga has only been charged with a misdemeanor violation under Minn.Stat. § 340.941: he has neither been tried nor sentenced. No jail sentence has been imposed. *See, e.g. State v.*

*Colsch,* 284 N.W.2d 839 at 841–42 (Minn. 1979); *State v. Young,* 294 N.W.2d 728, 730 (Minn.1980). Under these circumstances there simply exists no merit to defendant's general claim that he has been deprived of due process. *See State v. Young; State v. Lundgren,* 124 Minn. 162, 144 N.W. 752 (1913). The logic of the majority's attempt to distinguish this case from *State v. Lundgren* and *State v. Young* on the gounds the sentencing guidelines were not then in force escapes me. Ever since the establishment of statehood, long before the establishment of the sentencing guidelines, a judge sentencing, for example, Mr. Lundgren or Mr. Young could have, and usually did, take into consideration prior convictions of this nature in enhancing subsequent sentences. The alleged distinction, in my opinion, is one without a difference. For all of the foregoing reasons, I would uphold the constitutionality of the statute.

But even if one can get over the justiciability hurdle, I am likewise deeply troubled that the majority opinion by declaring Minn.Stat. § 340.941 unconstitutional on the grounds that it violates substantive due process seems to revert to pre–1937 *Lochner* era. In *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), the United States Supreme Court declared unconstitutional a statute limiting working hours as an improper exercise of the police power, in part, because the majority of the court in that case did not agree with the soundness of views which promulgated and upheld the law. The majority of the court in *Lochner* substituted its views that the statute substantially deprived employers of certain rights, doing so under the banner of substantive due process. That court, the Supreme Court of the United States, has wisely retreated from substantive due process as a constitutional theory for striking down economic and social legislation for more than 50 years. *See, e.g., Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028,

1031, 10 L.Ed.2d 93 (1963) (Court has long discarded *Lochner* doctrine and returned to original constitutional proposition that courts do not substitute their social and economic beliefs for judgment of acts of legislative bodies). *See also* Paulsen, M. *The Persistence of Substantive Due Process in the States,* 34 Minn.L.Rev. 91 (1950) where the author criticized state supreme courts for using substantive due process to strike down economic and social legislation after the United States Supreme Court had abandoned this approach. Yet that is precisely what the majority announces it is doing—striking down this legislation directed toward a regulation of a social problem on a substantive due process ground. *See also* McKnight, *Minnesota Rational Relation Test: The Lochner Monster in the 10,000 Lakes,* 10 Wm. Mitchell L. Rev. 709 (1984) (a critique of the Minnesota Supreme Court for resurrecting substantive due process and misapplying the equal protection rationality test).

Apparently the majority recognizes that the United States Supreme Court has used restraint in substituting the views of its majority for those of legislative bodies, for it now seeks to avoid that half century of precedent by suddenly holding that "due process of law," as used in Minnesota Constitution, art. 1, § 7, which is identical to "due process of law" as used in amend. XIV, § 1 of the United States Constitution, permits a regression to substantive due process analysis authorizing this court to strike down legislative enactments the majority does not like. Indeed, the opinion goes even further than that because it purports to strike down any and all Minnesota criminal statutes that may impose "imprisonment" for one vicariously when one over whom one had control performed a criminal act.[1]

The majority's holding today not only fails to give deference to decades of legisla-

---

**1.** Throughout the majority opinion, the word "imprisonment" is consistently used. Perhaps it is mere semantic quibbling, but in Minnesota, under Minn.Stat. § 340.941, no one convicted can go to prison. Those convicted of gross misdemeanors in Minnesota do not go to prison. Although Minn.Stat. § 609.03 uses the word "imprisonment," it really means jail time at most.

tive policy, but it is likewise at odds with rulings of the majority of the courts of our sister jurisdictions. It can be stated as a general rule, that statutes imposing vicarious criminal liability upon the "innocent" employer for the illegal conduct of the employee have been generally upheld as constitutional. *See* Annot., 139 A.L.R. 306 (1942); Annot., 89 A.L.R.3d 1256 (1979). Although somewhat critical of the position of the great majority of the courts, Professor F.B. Sayre writing in Harvard Law Review acknowledged that in this field traditionally vicarious liability has not been considered to infringe on due process rights. Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv.L.Rev. 689 (1930). Likewise, although not necessarily embracing the majority position, and indeed critical of the imposition of vicarious liability in certain areas, LaFave and Scott have summarized the case law noting:

> If the authorized punishment is light—a fine or perhaps *a short imprisonment* —the statute is likely to be construed to impose vicarious liability on a faultless employer. But if the permitted punishment is severe—a felony or serious misdemeanor—the statute is not apt to be so construed in the absence of an express provision for vicarious responsibility.

Handbook on Criminal Law at § 32 (emphasis supplied). The Minnesota statute in question here has an express provision for vicarious liability and permits light punishment. Minn.Stat. § 609.03. Section 340.941 should be upheld as constitutional.

As lucidly stated in *Hershorn v. People*, 108 Colo. 43, 113 P.2d 680 (1941), the Colorado Supreme Court in upholding the conviction of the president and general manager of a corporation which operated a nightclub for selling liquor to an intoxicated minor and affirming the imposition of a sentence of 60 days in the county jail said, "To make unlawful the sale of intoxicants to minors and inebriates, regardless of intent, is a reasonable legislative regulation of the liquor traffic, so long as the proscribed act amounts only to a misdemeanor." 108 Colo. at 56, 113 P.2d at 686.

Likewise, the Model Penal Code also allows for vicarious criminal liability. "A person is legally accountable for the conduct of another when * * * he is made accountable for the conduct of such other person by the Code or by the law defining the offense * * *." Model Penal Code § 2.06, subd. 2(b). The comment to the Model Penal Code makes reference to statutes such as section 340.941.

There is an additional situation contemplated in the formulation of Subsection (2)(b), mainly involving vicarious liability for acts of agents or employees in the course of their employment. Where the liability is not based upon explicit legislation, the decision to impose it by interpretation usually takes the ground that the legislature has imposed on special persons (e.g., an owner or a licensee) an absolute duty (e.g., that liquor not be sold to a minor), the performance of which is not delegable to an agent; or that strict liability has been imposed for the offense, making it no more unjust to hold the innocent master than his innocent servant acting in the course of his employment.

*Id.* at comment 4.

While the Twenty-first Amendment to the U.S. Constitution does not empower the state to invade a citizen's due process rights, it "has bestowed upon the states broad regulatory powers over liquor importation, recognized as something more than normal state authority over health, welfare, and morals." *Federal Distillers, Inc. v. State*, 304 Minn. 28, 40, 229 N.W.2d 144, 154 (1975), *appeal dismissed* 423 U.S. 908, 96 S.Ct. 209, 210, 46 L.Ed.2d 137 (1975). I would hold Minn.Stat. § 340.941 to be a proper exercise of state regulatory power that does not invade the defendant's due process rights. The statute does not impose strict liability but only vicarious liability subject to defenses. At trial, the defendant may establish the defense that he or his employee adequately attempted to

investigate the age of the purchaser. Minn.Stat. § 340.942 (1984).[2]

Every legislative enactment comes to the courts with a presumption in favor of its constitutionality. *Federal Distillers, Inc. v. State*, 304 Minn. at 39, 229 N.W.2d at 154. The burden of proof is on the challenging parties to show beyond a reasonable doubt that the act violates some particular constitutional provision. *Id.* I do not believe the defendant has met his burden in challenging the constitutionality of Minn. Stat. § 340.941 of demonstrating that the act is "arbitrary and unreasonable." *State ex. rel. Larson v. City of Minneapolis*, 190 Minn. 138, 139–40, 251 N.W. 121 (1933). He has failed to establish a justiciable issue indicating violation of any due process rights. But even if he had established a justiciable issue, I suggest the court errs in the holding that as a matter of substantive due process under Minnesota's Constitution that Minn.Stat. § 340.941 violates the due process clause. I would follow our own precedents and remain consistent with the great majority of states in recognizing the legislatively stated public policy of strict enforcement of liquor laws prohibiting sales to minors by imposing vicarious criminal liability on the owner-employer for such illegal sales.

SCOTT, Justice (dissenting).

I join in the dissent of Justice Kelley.

---

2.  Minn.Stat. § 340.942 provides:
    In any criminal proceeding for the enforcement of the provisions of sections 340.035, 340.-73, 340.83, 340.941, relating to the sale or furnishing of non-intoxicating malt liquor or intoxicating liquor to the persons described therein, the defendant may establish by competent evidence that he has made a bona fide and careful investigation of the status of such person and he has determined upon evidence sufficient to convince a careful and prudent person that such sale is not a violation of said sections; such evidence shall be considered in determining whether the defendant is guilty of intent to violate said laws.